IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

No. 16-16663

MANUEL DE JESUS ORTEGA MELENDRES, *et al.*,

Plaintiffs-Appellees

and

UNITED STATES OF AMERICA,

Intervenor-Plaintiff-Appellee

v.

MARICOPA COUNTY,

Defendant

———————————————

GERARD A. SHERIDAN,

Movant-Appellant

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

———————————————

PLAINTIFFS-APPELLEES' MOTION TO DISMISS MOVANT-APPELLANT
SHERIDAN'S APPEAL

———————————————

Pursuant to Federal Rule of Appellate Procedure 27, Appellees respectfully move for dismissal of this appeal by Gerard Sheridan—the former Chief Deputy of the Maricopa County Sheriff's Office ("MCSO").[1] Since the filing of the appeal on December 27, 2016, Sheridan's employment status with the MCSO has significantly changed, as have the employment statuses of Sheridan's former co-appellants, Joseph Arpaio (the former Sheriff of the MCSO) and Joseph Sousa (a former Lieutenant within the MCSO). Sheridan and Sousa have both retired from the MCSO, and Arpaio's term in office ended on January 1, 2017, following his unsuccessful run for reelection and the inauguration of the newly elected Sheriff, Paul Penzone.[2] Dist. Ct. Doc. 1987 at 4 n.2 (Ex. 5); Dist. Ct. Doc. 2044 at 2 (Ex. 7).[3] Sheriff Penzone was substituted for Arpaio in this appeal on February 13, 2017. Doc. 25.[4] Sheriff Penzone withdrew the Sheriff's Office entirely from the appeal on April 26, 2017. Doc. 29. Sousa likewise withdrew himself from this appeal, as well as from similar recusal motions pending before the district court, on

---

[1] Under Circuit Rule 27-11, a motion for dismissal stays briefing on the merits pending a decision on the motion. Appellees respectfully note that this motion to dismiss should therefore stay the briefing schedule here. Appellees have notified other counsel. Counsel for Sheridan has indicated that he will need to review Appellees' motion prior to taking a position.

[2] *See* KPHO/KTVK, *New Maricopa County Sheriff Takes Office in Private Ceremony*, Jan. 1, 2017, http://www.azfamily.com/story/34162783/new-maricopa-county-sheriff-takes-office-in-private-ceremony.

[3] Docket citations herein denoted "Dist. Ct. Doc." are to the district court docket, 07-cv-02513-PHX-GMS.

[4] Citations herein denoted "Doc." are to documents filed in this appeal.

the basis that he lacked standing to proceed.  Doc. 34; Dist. Ct. Doc. 2044 (Ex. 7).  The only remaining appellant is the now-retired Sheridan.[5]

Sheridan does not have (and has not set forth) any basis on which he has standing to proceed in this appeal.  Sheridan's appeal challenges certain remedial measures imposed by the district court on the MCSO and seeks reassignment of the case below to a different district court judge and court-appointed monitor, as well as vacatur of the district court's civil contempt findings and pursuant injunctive relief.  However, Sheridan has no remaining interest relating to the remedial measures or to any future proceedings by the district court and no basis for challenging the contempt findings.  The district court did not actually enter any judgments, sanctions, or coercive remedies against Sheridan in his individual capacity.  The County has assumed responsibility for compensatory relief, ER 307–08, and with retirement Sheridan no longer bears any responsibility for ensuring the MCSO's compliance with the ordered injunctive relief.  In other words, Sheridan is not required to do anything as a result of the district court's orders.  Sheridan can point to no concrete or non-speculative injury as a result of

---

[5] To the extent Arpaio argues that he remains an appellant in his individual capacity or otherwise in this appeal, that is incorrect.  Arpaio was removed entirely as an appellant on February 13, 2017, when he was substituted for now Sheriff Penzone.  Doc. 25; *see also* Doc. 34 (describing Sheridan as "the remaining appellant").  Since that time, Arpaio has not attempted to intervene in this matter in his individual capacity; nor could he.  Were Arpaio still an appellant in this case, his appeal would likewise require dismissal on standing and mootness grounds.

those orders, and even the hypothetical harms he has pointed to before the district court, *see* Dist. Ct. Doc. 1987 (Ex. 5), are not redressable by the relief he seeks on appeal. Notably, current Sheriff Penzone does not appeal the remedial measures which now run against him, and neither Sheriff Penzone nor Maricopa County (the continuing parties in the case) seek the recusal or reassignment of the district court judge or his court-appointed monitor.

For the reasons explained below, the Court should dismiss this appeal.

## STATEMENT OF FACTS[6]

In 2007, Plaintiffs-Appellees filed a civil rights lawsuit against Arpaio, the MCSO, and the County. ER 938–68, 1011. On December 23, 2011, the district court granted partial summary judgment to the Plaintiff class and immediately enjoined the MCSO from detaining people based solely on suspicion or knowledge of unlawful presence in the United States. Dist. Ct. Doc. 494 at 40 (Ex. 1). Defendants (Sheriff Arpaio and the MCSO) unsuccessfully appealed the preliminary injunction. Dist. Ct. Doc. 587 (June 21, 2013 notice of appeal) (Ex. 2); *Melendres I*, 695 F.3d at 994.

---

[6] The background facts of this case may be found in greater detail in preceding opinions of this Court and the district court. *See, e.g.*, *Melendres v. Arpaio* (*Melendres II*), 784 F.3d 1254 (9th Cir. 2015); *Melendres v. Arpaio* (*Melendres I*), 695 F.3d 990 (9th Cir. 2012); *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 2783715 (D. Ariz. May 13, 2016); *Melendres v. Arpaio*, 989 F. Supp. 2d 822 (D. Ariz. 2013).

On May 24, 2013, following a bench trial, the district court entered judgment against Sheriff Arpaio and the MCSO, holding that the MCSO's policies and practices violated the Fourth and Fourteenth Amendments. ER 886–90. On October 2, 2013, the district court issued a Supplemental Permanent Injunction/Judgment Order appointing an independent monitor and containing several additional remedial provisions. ER 669–727. This Court affirmed, in large part, that order. *See Melendres II*, 784 F.3d 1254.

On May 14, 2014, the district court held a hearing during which the MCSO revealed that it had discovered hundreds of personal items that were now in its possession, many of which appeared to have been confiscated from members of the Plaintiff class. ER 572. During that hearing, Sheridan admitted that it was a common practice for sheriff's deputies to make recordings of their stops and that there was no agency policy governing such recordings. ER 573. The district court ordered that steps be taken to preserve these recordings, which the court found should have been provided to the Plaintiffs prior to the original trial in this case. ER 574. Shortly thereafter, it became apparent that the MCSO had continued to detain individuals on the basis of unlawful presence alone for at least seventeen months in violation of the district court's original injunction. ER 574–75.

As a result of these and further developments, Plaintiffs moved for an order to show cause as to why the MCSO, Arpaio, and certain employees, including

Sheridan, should not be held in civil contempt. Dist. Ct. Doc. 843 (Ex. 3). On February 12, 2015, the district court issued an order as to three possible grounds of civil contempt: 1) failure to comply with the district court's preliminary injunction, 2) violation of discovery obligations, and 3) failure to comply with the court's order to preserve video and audio recordings. ER 595. Defendants were also placed on notice that "the adequacy and good faith of their [internal] investigations would be subject to evaluation by the Parties and the Court." ER 223.

Prior to commencement of the civil contempt hearing, Arpaio and Sheridan admitted to the allegations in the order to show cause, "acknowledg[ing] that they have violated the Court's orders and that there are consequences for these violations." Dist. Ct. Doc. 948 at 2 (Ex. 4). Arpaio and Sheridan did not, however, admit that these violations were intentional and knowing, which the district court held was relevant to the determination of appropriate remedies. ER 72, 86–87. Following twenty-one days of evidentiary hearings in 2015, the district court issued extensive findings of fact as to Arpaio and several non-party contemnors, including Sheridan and Sousa, on May 13, 2016. ER 68–229. As to Sheridan, the district court found that he admitted to civil contempt for violating the court's orders, ER 83, and had in fact intentionally and knowingly failed to abide by the court's preliminary injunction and the court's order to collect and preserve audio and video recordings responsive to Plaintiffs' discovery requests,

5

ER 83–87, 107–10. Notably, Sheridan, Sousa, and Arpaio have never contested—including in this appeal—the accuracy of the district court's findings of fact that they knowingly and intentionally engaged in violations of the court's orders.

After extensive briefing on remedies, the district court issued a second supplemental injunction based on its broad equitable powers to remedy past wrongs, equitable authority to modify its injunctions in light of changed circumstances, and authority to impose remedial sanctions for civil contempt. ER 3. The district court noted that "[h]ad [it] had access to the evidence withheld by the MCSO and the evidence to which it led, the Court would have entered injunctive relief much broader in scope" following the original trial. *Id.* The district court's remedies focused primarily on reforming the internal affairs policies and practices, which the district court found were being used by the MCSO to conceal and avoid responsibility for misconduct against members of the Plaintiff class. ER 6. None of the court's injunctive remedies applied to Sheridan, or to any other contemnors, in an individual capacity. The district court also ordered the creation of a victim compensation fund by Maricopa County to remedy violations of the preliminary injunction. ER 308. It declined to order compensation by Sheridan or other non-party contemnors in their individual capacities, noting that, instead, victim compensation "is guaranteed" via the County. ER 307.

6

On November 8, 2016, Arpaio lost his bid for re-election.[7]  His term ended on January 1, 2017, when Sheriff Paul Penzone was sworn in to office.  On December 27, 2016, prior to leaving office, however, Arpaio filed this appeal and was joined by Sheridan and Sousa.  The appeal challenges some of the injunctive remedies issued by the district court and seeks reassignment of the district court judge and court-appointed monitor and vacatur of the district court's contempt findings and injunction.  Appellant's Br. at 3.

On February 9, 2017, Sheriff Penzone filed a notice of substitution for Arpaio, which resulted in Arpaio's removal from this appeal on February 13, 2017.  Doc. 23; Doc. 25.  On April 26, 2017, the Court granted Sheriff Penzone's unopposed motion to withdraw his appeal, leaving only Sheridan and Sousa as appellants.  Doc. 29.

Both Sheridan and Sousa have now retired from the MCSO.  Dist. Ct. Doc. 1987 at 4 n.2 (Ex. 5); Dist. Ct. Doc. 2044 at 2 (Ex. 7).  Sousa moved for dismissal of his appeal, which was granted on May 25, 2017.  Doc. 33; Doc. 34.  Notably, before the district court, Sousa also withdrew himself from pending motions that raise similar issues to those in this appeal, seeking the recusal of the district court and its monitor and discovery of all communications between the district court and its monitor.  Dist. Ct. Doc. 2044 (Ex. 7); ER 1219.  Sousa cited a lack of standing

---

[7] *Sheriff Joe Arpaio Loses Bid for 7th Term in Arizona*, N.Y. Times, Nov. 9, 2016, https://www.nytimes.com/2016/11/09/us/joe-arpaio-arizona-sheriff.html.

as the reason for withdrawal from those motions before the district court. Dist. Ct. Doc. 2044 at 2 (Ex. 7). The only remaining appellant is Sheridan.

## ARGUMENT

Non-party standing to appeal is limited to "exceptional circumstances." *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002)). Because Article III's standing requirement applies to every stage of litigation, an individual seeking appellate review must establish "that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citation omitted); *see also Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1395–96 (9th Cir. 1992) (citations omitted). "[C]onjectural or hypothetical" injuries are not sufficient, nor is "merely speculative" redressability enough. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Sheridan is not a party, has no interest that would be at issue in future proceedings, and has no direct, non-speculative injury that would be redressable by this Court. Sheridan does not have standing for any of the relief that he now seeks.[8]

---

[8] Because mootness is, essentially, "standing set in a time frame," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980), if the Court determines that Sheridan would have standing but for his retirement, the appeal is now moot. No

## I.   Sheridan Lacks a Requisite Connection to Challenge the Remedial Measures Ordered by the Second Supplemental Injunction.

Sheridan lacks standing to challenge the scope of the second supplemental injunction as beyond the district court's equitable and civil contempt authority. Sheridan has no grounds for standing predicated on the civil contempt citations. More fundamentally, Sheridan has no requisite connection to the injunctive relief: he has no interest in the matter any greater than that of any other resident of Maricopa County.  The district court's second supplemental injunction, issued following the hearing on civil contempt, runs only against Sheriff Penzone in his official capacity and places no obligations on Sheridan as an individual.  As a retired, private individual, Sheridan has no connection to requirements that the Sheriff's Office implement the remedial measures that he purports to challenge.

Specifically, Sheridan appeals several remedies imposed by the district court against the MCSO through the second supplemental injunction, arguing that these measures are beyond that court's inherent authority and equitable powers.  These include reforms to the MCSO's internal affairs policies and procedures, staffing requirements, complaint testing, and an off-site location for the MCSO's Professional Standards Bureau office.  All of these measures were properly tailored by the district court to remedy past wrongs and prevent future harm to members of the Plaintiff class.

exception to mootness applies here.  *See Friends of the Earth*, 528 U.S. at 190–91.

Sheridan's challenge to these remedies, by contrast, is improper, because none of the remedies "affect[] him in a 'personal and individual way.'" *See Hollingsworth*, 133 S. Ct. at 2662 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). Neither the compensatory nor the coercive remedial civil contempt sanctions issued by the district court place any continued obligation on Sheridan, now that he has left the agency. No compensatory remedies run to Sheridan: he bears no individual responsibility for the victim compensation fund created to remedy the violations of the preliminary injunction. ER 307–08. With retirement, Sheridan also has no ongoing affirmative responsibility as an employee of the MCSO to bring the Office into compliance with the coercive remedial order. *Cf.* Fed. R. Civ. P. 65(d)(2)(B)–(C) (specifying the parties' employees and those "in active concert or participation" as bound by an injunction on receiving notice).

Moreover, to the extent that Sheridan challenges the second supplemental injunction as beyond the district court's inherent equitable authority to modify already existing injunctive relief, he does not have standing to specifically challenge that relief. Sheridan had no relationship to the original trial or the resulting injunctive relief. The district court grounded the relief ordered in the second supplemental injunction (the only relief at issue in this appeal) in part on the basis that it "would have entered injunctive relief much broader in scope" in the original injunction, had the MCSO not withheld evidence from the original

10

trial. ER 3–5 (also stating that the remedies flow in part from "the MCSO's history of noncompliance").

Because Sheridan was not a party to the *initial* proceedings in which that evidence was improperly withheld, he has no particular, individualized grounds for standing to challenge relief that flows from the district court's authority to modify injunctive relief resulting from those proceedings. *Hilao*, 393 F.3d at 992 (quoting *S. Cal. Edison Co.*, 307 F.3d at 804) (requiring that nonparties have "participated in the district court proceedings" and that the equities also "weigh in favor of hearing the appeal"); *SEC v. Wencke*, 783 F.2d 829, 834–35 (9th Cir. 1986) (finding that a non-party litigant had standing to appeal where district court treated him "as if he were a party," including by permitting him to file briefs and cross-examine witnesses, and appeared to "perceive[] him as an intervenor"). Sheridan had no such equivalent participation in the district court's initial trial and thus has no stake in the injunctive relief to remedy the MCSO's constitutional violations.

Rather, Sheridan's interest in this context is that of any other outside observer, and he has made no showing that modification of the second supplemental injunction will affect him in any more particular way than it would "every citizen[]." *Defenders of Wildlife*, 504 U.S. at 573–74. Likewise, non-party employees who claim injury from relief issued against their employer have no grounds to appeal. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (holding that a

group of non-party police officers claiming injury could not appeal a consent decree regarding a city police promotional exam); *Emp'rs-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007). Sheridan, as a nonparty *former* employee, has even less of a connection here. In short, Sheridan has no injury in fact pertaining to the second supplemental injunction for this Court to redress and no relationship to the litigation for purposes of appealing the equitable relief.

## II. Sheridan Lacks Standing to Seek the District Court Judge's and Monitor's Future Recusal or Reassignment.

Sheridan also has no injury in fact that would give him standing to seek the district judge's or monitor's recusal or reassignment on a going-forward basis, such that he would have "a 'direct stake in the outcome' of the case." *Hollingsworth*, 133 S. Ct. at 2662 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)). Sheridan has neither shown nor alleged that the district court judge's and monitor's continued involvement in the case give him such a direct stake. The remaining proceedings in the district court solely implicate the district court's ongoing oversight of now Sheriff Penzone's compliance with the three ordered injunctive remedies. *See* ER 1–67, 669–727, 886.

Sheridan has made no showing that he has any interest in future proceedings by the district court or its monitor beyond that of any person. *Defenders of Wildlife*, 504 U.S. at 573–74. While his opening brief calls for the disqualification

12

of the district court judge and the monitor, it provides no reason that Sheridan, a former employee of the MCSO who lacks any further obligations to act to implement the court's remedies, would experience injury in fact due to the district judge's monitoring of efforts to ensure that the Sheriff and the agency comply with the district court's remedial orders.

Courts routinely find that standing to seek recusal extends only to actual parties to the future proceedings in litigation. *See In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1310 (9th Cir. 1982) (addressing first whether class members were "parties" such that they had standing to seek the court's recusal); *Zepeda & PayPal, Inc.*, No. C 10-2500 SBA, 2014 WL 555861, at *2 (N.D. Cal. Feb. 10, 2014) (holding "[a]s an initial matter, [that the movant] is not a party to this action and therefore lacks standing to bring a motion for recusal"); *see also In re Auerhahn*, MBD No. 09–10206, 2009 WL 3126894, at *4 (D. Mass. Sept. 25, 2009) (same); *United States v. 8 Gilcrease Lane*, No. 08–1345 (RMC), 2009 WL 2408414, at *1 (D.D.C. Aug. 4, 2009) (same). Recusal pursuant to 28 U.S.C. § 455(b)(1) also applies only when a judge "has a personal bias or prejudice concerning a *party*, or personal knowledge of disputed evidentiary facts concerning the *proceeding*." (emphases added). "The statutory examples of 'proceeding' in 28 U.S.C. § 455 'imp[ly] the judge's participation in decisions affecting the substantive rights of litigants to an actual case or controversy . . . confer[ring] a

right upon the litigant to seek recusal [during] . . . phases of the litigation.'" *United States v. Patterson*, 292 F. App'x 835, 836 (11th Cir. 2008) (quoting *United States v. Sciarra*, 851 F.2d 621, 635 (3d Cir. 1988)).  Sheridan has no interest or participation in future proceedings with the district court judge or monitor.

Importantly, Sheriff Penzone, who in fact does have a continuing interest in future proceedings before the district court judge and monitor, has withdrawn from this appeal and is no longer seeking the district judge's or monitor's recusal or reassignment. There is no reason to permit a non-party former employee who is not subject to the court's injunction or future proceedings to seek recusal, where it would be contrary to case law and to the litigation choices of the actual parties.

## III. Sheridan Lacks Standing to Seek to Vacate the District Court's Contempt Findings.

Sheridan has also failed to establish any concrete and particularized injury he would suffer that would be redressable by vacating the district court's contempt findings.  The contempt citations standing alone provide no basis for standing.  The contempt findings place no obligations on Sheridan himself, and he has established no other non-speculative and redressable injury due to the district court's findings, as Article III standing requires.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (explaining that for standing, a litigant must show that a decision in his favor is "likely" to redress his purported injury); *see also Friends of the Earth*, 528 U.S. at 180–81; *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th

14

Cir. 2002). And the underlying factual findings, untethered from particular ordered relief, similarly can provide no basis for vacatur.[9] *See Nat. Res. Def. Council v. Gutierrez*, 457 F.3d 904, 905–06 (9th Cir. 2006) (finding an absence of appellate standing where litigants "challenge[d] the district court's legal rulings in the abstract" but did not seek to overturn ordered relief).

## A. A Civil Contempt Finding Does Not Provide a Basis for Standing Where, as Here, an Appellant Has No Continued Obligations.

Non-party standing to appeal a civil contempt finding is restricted to circumstances in which the nonparty is required to comply with certain coercive remedies or pay compensation—in other words, "matters in which [the nonparty] has [a] legitimate interest." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (explaining that arguments regarding personal jurisdiction over parties or statute of limitations requiring dismissal would be beyond the "legitimate interest" of a non-party witness in civil contempt); *see also In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 544 (9th Cir. 1996) (finding that the Republic of the Philippines, while not an actual party, could appeal the court's injunction because it was expressly enjoined from taking

---

[9] Interests that do not suffice to prevent a case from becoming moot are *a fortiori* "insufficient to confer standing" because "[o]therwise, the case would immediately be moot." *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1075 (9th Cir. 2005). Consequently, cases finding mootness notwithstanding an asserted interest likewise indicate a lack of standing based on that interest. *See id.* This motion accordingly cites mootness cases as relevant to analysis of standing interests. *See infra* Parts III.A, B.

certain actions by that injunction and incurred an ongoing risk of contempt sanctions for failing to abide by it).  As Sheridan has retired and has no continued responsibility for compliance, he has no standing to bring this appeal.

Civil contempt is not a punishment in itself but, rather, is a remedy for the benefit of the party injured by the contempt: "to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."  *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citations omitted).  The mere fact of a civil contempt citation alone is not automatically sufficient for appellate standing.

Rather, cases in which civil contempt permits non-party standing involve—unlike this case—a civil contempt judgment that places a continued obligation upon the non-party contemnor to comply pursuant to the coercive remedy or to pay compensation.  For example, a civil contempt order that fines the non-party contemnors for each day of noncompliance and for which the non-party contemnors remain liable is appealable.  *See, e.g.*, *U.S. Catholic Conference*, 487 U.S. at 75–76.  But a nonparty held in contempt lacks the requisite legitimate interest to appeal that ruling where another party or contemnor has assumed responsibility for the contempt remedy.  For instance, this Court found that a non-party corporate president's appeal of a contempt order was moot where both the president and the corporate entity (a party to the litigation) were adjudged in civil

contempt and ordered to pay a fine, but the corporate entity paid the entirety of the fine. *Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.*, 625 F.2d 881, 882–84 (9th Cir. 1980); *see also In re Grand Jury Subpoena Duces Tecum, 91–02922*, 955 F.2d 670, 672 (11th Cir. 1992) (holding that for "purely coercive civil contempt, a contemnor's compliance . . . moots" any challenge to the "contempt adjudication"); *cf. In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 747 F.2d 1303, 1305–06 (9th Cir. 1984) (explaining that, where a party would ultimately pay sanctions that were imposed not on the party but on a nonparty, "[t]he contempt order . . . d[id] not place [the nonparty] directly at risk").

Like the nonparty in *Union of Professional Airmen*, Sheridan has been "relieved . . . of any liability under the contempt order" and consequently has "no interest in" continued litigation of that order. 625 F.2d at 884. In the absence of any continued connection to the district court's remedies, Sheridan lacks any plausible direct stake to maintain an appeal.

## B. Sheridan's Civil Contempt Citations Do Not Confer Standing Based on Speculative Harms.

Without any remaining direct legitimate interest stemming from the contempt remedies, any stigmatic harm as a collateral consequence of the contempt citations—which Sheridan has not advanced here—would also be insufficient to confer standing. As the Supreme Court has previously explained in the contempt context, "the moral stigma of a judgment which no longer affects legal rights does

17

not present a case or controversy" where the issue the litigant pursues is otherwise moot. *St. Pierre v. United States*, 319 U.S. 41, 43 (1943) (finding mootness notwithstanding allegations of continued reputational harm by a contemnor who had completed his sentence); *see also Spencer v. Kemna*, 523 U.S. 1, 16 n.8 (1998) (explaining that the Court has never found "interest in vindicating . . . reputation" to be enough to avoid mootness, including in the criminal misdemeanor context).

Even sanctions more severe than civil contempt do not provide standing based on reputational harm alone. *See Jackson*, 399 F.3d at 1075 (finding designation as a sexually violent predator insufficient for standing and explaining that even though "some of this harm could be remedied by a judgment . . . not all injuries amount to injuries in fact"). Where a court's determination "of the legal issues underlying" Rule 11 sanctions would have no bearing on payment of those sanctions due to a settlement agreement, the sanctions issue is moot, despite an asserted reputational harm. *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1112 (9th Cir. 1990). The Supreme Court has repeatedly affirmed that collateral reputational consequences from judgments are not enough for continued Article III injury in fact. *Kemna*, 523 U.S. at 16 n.8 (collating cases); *Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003) ("where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit," that reputational harm "cannot satisfy the requirements of Article III"). It has specifically found

18

that reputational harm from contempt is alone not enough to sustain litigation. *St. Pierre*, 319 U.S. at 43. Any stigmatic harm or associated consequences that Sheridan might point to as grounds for standing would be unavailing.

### C. Any Other Purported Injury Would Not Suffice for Standing Purposes.

Sheridan has provided no other indication that he has suffered injury in fact redressable by vacatur of the district court's contempt findings or second supplemental injunction. In similar arguments before the district court, Sheridan suggested that the district court's criminal contempt referral and an ongoing independent investigation into Sheridan by the Arizona Peace Officer Standards and Training Board (AZPOST) might provide standing for vacatur of the civil contempt findings. Dist. Ct. Doc. 1987 at 1, 7, 11–12 (Ex. 5). But neither injury would be redressable by overturning the district court's findings or remedial orders. An end to the AZPOST investigation due to reversal of the district court's civil contempt rulings is at best highly speculative. Sheridan's criminal contempt referral sparked that investigation. Dist. Ct. Doc. 2009-1 (Ex. 6) (AZPOST press release). There is no evidence that overturning the contempt findings would compel or influence an end to the AZPOST proceedings—particularly given that Sheridan admitted to the misconduct underlying the contempt findings and has not challenged those findings as inaccurate. *See* Ariz. Admin. Code R13-4-109(D)

(describing AZPOST's determination to initiate action on "receipt of information that cause exists" to suspend or revoke certified status). Because relief here "depends on the unfettered choices" of an "independent actor not before the courts," there is no redressability. *See Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 695 (9th Cir. 2010) (quoting *Defenders of Wildlife*, 504 U.S. at 562).

The criminal contempt *referral* pursuant to 18 U.S.C. § 401 and Federal Rule of Criminal Procedure 42, ER 273, similarly does not provide grounds for appellate standing here. The referral itself did not constitute any actual finding that Sheridan engaged in criminal conduct. It merely referred the question to a different judge for an independent determination as to whether a trial on criminal contempt charges was warranted. ER 304. More importantly, Sheridan has been dismissed from the criminal contempt proceedings on statute-of-limitations grounds. Order, *United States v. Arpaio*, No. 2:16-cr-01012-SRB (D. Ariz. Dec. 13, 2016). Vacatur of the contempt findings would make no difference, and any purported reputational harm incurred would not amount to an injury for standing purposes—especially given Sheridan's admission of wrongdoing.

## CONCLUSION

Because Sheridan, the sole remaining appellant, lacks standing, this Court should dismiss the appeal.

Respectfully submitted,

Dated: June 2, 2017

/s/ Andre Segura
Andre Segura
Cecillia D. Wang
ACLU Foundation
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654
asegura@aclu.org

Kathryn L. Huddleston
ACLU Foundation of Arizona
3707 N. 7th Street, Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376
khuddleston@acluaz.org

Anne Lai
401 E. Peltason, Suite 3500
Irving, CA 92697
Telephone: (949) 824-9894
Facsimile: (949) 824-0066
alai@law.uci.edu

Stanley Young
Hyun Sik Byun
Covington & Burling, LLP
1 Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566
syoung@cov.com

Counsel for *Plaintiffs-Appellees*

21

## CERTIFICATE OF SERVICE

I, Andre Segura, hereby certify that on June 2, 2017 copies of this Motion to Dismiss Movant-Appellant's Appeal were electronically filed via the Court's CM/ECF system.


Dated: 06/02/2017                          /s/ Andre Segura
                                           Andre Segura
                                           ACLU Foundation
                                           125 Broad Street
                                           New York, NY 10004
                                           Telephone: (212) 549-2676
                                           Facsimile: (212) 549-2654
                                           asegura@aclu.org