IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

No. 16-16663
Panel: Wallace, Graber, and Berzon, JJ.

MANUEL DE JESUS ORTEGA MELENDRES, *et al.*,

Plaintiffs-Appellees

and

UNITED STATES OF AMERICA,

Intervenor-Plaintiff-Appellee

v.

GERARD A. SHERIDAN,

Defendant-Appellant

and

MARICOPA COUNTY,

Defendant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
_____

UNITED STATES' MOTION TO DISMISS NONPARTY APPELLANT
GERARD A. SHERIDAN'S APPEAL FOR LACK OF STANDING
_____

The United States respectfully moves, under Federal Rule of Appellate Procedure 27(a), to dismiss nonparty appellant Gerard Sheridan's appeal for lack of standing.[1]  When this appeal was filed, the three appellants—then-Sheriff Joseph Arpaio and nonparty contemnors Joseph Sousa and Gerard Sheridan—were senior officials in the Maricopa County Sheriff's Office (MCSO).  In this appeal, they challenge the district court's July 26, 2016, Second Amended Second Supplemental Permanent Injunction (Second Permanent Injunction), which mandates, among other things, new internal affairs procedures for the investigation and resolution of allegations of employee misconduct.  They argue that the Second Permanent Injunction exceeds the district court's remedial powers, that the district court judge (Judge Snow) and the court-appointed monitor must be disqualified based on various alleged misconduct, and that the Second Permanent Injunction and contempt findings must be vacated.

Since the appellants' joint opening brief was filed on December 27, 2016, two of the three appellants have withdrawn from the appeal, including the current Sheriff of MCSO, who, in his official capacity, declined to pursue the appeal on

---

[1]  Although the official caption currently lists Gerard A. Sheridan as Defendant-Appellant, Mr. Sheridan is not a party to this case.  We respectfully request that the Court modify the caption to designate Gerard A. Sheridan as Nonparty-Appellant, as he has identified himself in his opening brief.

behalf of MCSO.[2] That leaves Sheridan as the only remaining appellant here. But Sheridan has retired as Chief Deputy of MCSO. As a result, Sheridan bears no responsibility for implementing the challenged injunction and cannot show that he will suffer a concrete or immediate injury if the injunction is not vacated or Judge Snow and the monitor are not recused. Indeed, Sheridan has admitted that, because he is no longer an MCSO employee, he is not subject to its discipline. Doc. 1987 (Attachment 1), at 4 n.2.[3] And although Sheridan requests that this Court vacate the underlying contempt findings based on the alleged bias of Judge Snow, he does not challenge the findings themselves. Indeed, he consented to a contempt finding against him. Doc. 948 (Attachment 2), at 1. Finally, the court did not impose any sanctions or remedial liability on Sheridan for his contempt. For these reasons, Sheridan has no legally cognizable interest in the appeal, and as explained below, the appeal should be dismissed for Sheridan's lack of standing.

---

[2] On February 13, 2017 this Court substituted Arpaio with Paul Penzone, who became Sheriff of Maricopa County while the appeal was pending. Sheriff Penzone, in his official capacity, filed a motion to dismiss his appeal, which this Court granted on April 26, 2017. Sousa recently retired from MCSO in April 2017, Doc. 2044 (Attachment 3), at 2, and also filed a motion to dismiss his appeal, which this Court granted on May 25, 2017. As the Sheriff was sued only in his official capacity, his withdrawal from the appeal was a withdrawal of MCSO because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky* v. *Graham*, 473 U.S. 159, 166 (1985).

[3] "Doc." refers to documents filed in the district court by docket number. "E.R." refers to parallel citations in the Excerpts of Record filed with appellants' opening brief.

Pursuant to Circuit Rule 27-1(2), the United States has notified counsel for nonparty appellant Sheridan and counsel for private plaintiffs-appellees of the United States' intention to file this motion. Counsel for Sheridan oppose this motion. Counsel for private plaintiffs-appellees agree with the request in this motion and have also filed a motion to dismiss this appeal on the same grounds.

## BACKGROUND

1. In December 2007, private plaintiffs filed a class action against Maricopa County, then-Sheriff Joseph Arpaio, and other defendants alleging that, among other things, defendants engaged in a custom, policy, and practice of discriminatory policing against Latino individuals and unconstitutionally stopping them in violation of the Fourth and Fourteenth Amendments. Doc. 1; see also Doc. 26, E.R. 938-968. In December 2011, the district court issued a preliminary injunction prohibiting certain unlawful detention practices. See *Ortega-Melendres* v. *Arpaio*, 836 F. Supp. 2d 959, 994 (D. Ariz. 2011), aff'd *sub nom.*, *Melendres* v. *Arpaio*, 695 F.3d 990 (9th Cir. 2012). Following a trial in 2012, the court found defendants liable for a number of constitutional violations, see *Melendres* v. *Arpaio*, 989 F. Supp. 2d 822 (D. Ariz. 2013), and entered a permanent injunction directing MCSO to amend policies and procedures to address these constitutional violations, and providing for an independent monitor, see *Melendres* v. *Arpaio*, No. CV-07-02513, 2013 WL 5498218 (D. Ariz. Oct. 2, 2013); Doc. 606, at 16, 24,

47-48, E.R. 684, 692, 715-716. This Court largely affirmed that injunction. See *Melendres* v. *Arpaio*, 784 F.3d 1254 (9th Cir. 2015). In August 2015, the district court granted the United States' unopposed motion to intervene. Doc. 1239.

In May 2014, the district court learned that defendants had failed to produce in discovery video and audio recordings of traffic stops, including "problematic stops" made during the period relevant to plaintiffs' claims. Doc. 880, at 4, E.R. 573. Despite plaintiffs' pretrial request for such recordings, defendants had not disclosed their existence or that a unit of MCSO maintained a catalog of them. Doc. 880, at 20, E.R. 589. As the court found, MCSO's subsequent administrative investigations concerning these recordings "apparently revealed" that defendants had continued the unlawful detention practices "for at least seventeen months after th[e] [c]ourt issued the preliminary injunction." Doc. 880, at 5, E.R. 574.

In February 2015, based on this newly gathered information, the district court issued an Order to Show Cause why defendants and others should not be held in civil contempt. Doc. 880, E.R. 570-596; see also Doc. 843 (Plaintiffs' Memorandum of Law and Facts re Contempt Proceedings and Request for Order To Show Cause). The court set forth three bases for civil contempt: (1) failing to implement and comply with the December 2011 preliminary injunction, (2) violating pretrial discovery obligations, and (3) failing to comply with its May 2014 orders for the retrieval of outstanding recordings. Doc. 880, at 26; E.R. 595.

- 5 -

The court scheduled an evidentiary hearing on the contempt charges for April 2015. Doc. 880, at 26, E.R. 595; Doc. 1677, at 1-2, E.R. 68-69. But prior to the hearing, Sheridan, along with others, moved to vacate the hearing. They acknowledged that they violated the court's orders and "consent[ed] to a finding of civil contempt against them" based on facts presented in the Order to Show Cause. Doc. 948, at 1-2. After the parties' unsuccessful attempt to settle the matter, the court denied the motion to vacate the hearing. Doc. 1007.

In April, September, October, and November 2015 the district court held 21 days of evidentiary hearings. Substantial evidence was presented relating to MCSO's intentional failure to implement the preliminary injunction, the "fail[ure] to disclose thousands of relevant items of requested discovery," the deliberate violation of court orders to recover certain evidence, and the manipulation of MCSO's internal investigations to escape accountability for misconduct against the plaintiff class. Doc. 1677, at 1-2, E.R. 68-69.

2. On May 22, 2015, after the first four days of the evidentiary hearing, Sheridan and Arpaio moved for recusal of Judge Snow pursuant to 28 U.S.C. 455.[4] Doc. 1117 (Attachment 4), at 2. They made four primary arguments. First, they alleged that Judge Snow's wife told a friend that Judge Snow "hates" Arpaio and

---

[4] The recusal motion was not Arpaio's first; he successfully moved to recuse Judge Murguia in 2009 shortly after she denied his motion to dismiss. Doc. 138, at 3, 11-12, 27.

- 6 -

would "do anything" to get him out of office. Doc. 1117, at 8; Doc. 1117-4, at 3;

Doc. 1117-5, at 2; Doc. 1117-6, at 13, E.R. 424. Second, they alleged that the

court had conducted the evidentiary hearing unfairly, *e.g.*, that Judge Snow

"interrupted," "was argumentative," "gave his own testimony," "took evidence"

outside of court during a lunch break, and ordered production of documents which,

movants claimed, should have been privileged. Doc. 1117, at 15.

Movants also pointed to an "investigation" by an MCSO consultant that

suggested that Judge Snow had discussed the case, before he was assigned to it,

with the Department of Justice. Doc. 1117, at 13; Doc. 1164 (Attachment 5), at 8-

9, 25-26, E.R. 237-238, 254-255. Movants did not assert that the investigation

established any wrongdoing, but suggested that it could affect the court's partiality.

Doc. 1117, at 13-14. Finally, movants noted that Judge Snow's brother-in-law

works for a law firm that also represents plaintiffs. Doc. 1117, at 13. Although

Arpaio's prior counsel had waived this potential conflict three years previously,

and the brother-in-law was screened from participation or profit in the case, current

counsel urged "reconsideration." Doc. 1117, at 13; Doc. 1164, at 36, E.R. 265.[5]

On July 10, 2015, the district court denied the motion for recusal. The court

noted that MCSO had investigated and rejected allegations about the judge's wife's

---

[5] Sheridan suggests Arpaio's waiver, entered before Sheridan's involvement in the case, is not "effective as to [him]." Opening Br. 56. He did not, however, raise this issue in his recusal motion. Doc. 1117, at 13.

comments in 2013.  Doc. 1164, at 12-13, E.R. 241-242.  The court also determined that procedures at the evidentiary hearing did not show bias.  As to the specific allegation that the court took evidence outside of court, Judge Snow explained that the court had spoken to the court-appointed monitor during the lunch break.  Doc. 1164, at 20, E.R. 249.  Further, addressing the supposed communications with the Department of Justice, the court explained that MCSO had not uncovered any judicial wrongdoing in reviewing the evidence collected by its consultant.  Doc. 1164, at 9, E.R. 238.  Finally, the court stated the issue of the potential law firm conflict had been settled years earlier, and defendants waived any issue of potential bias, including "any and all appeal issues."  Doc. 1164, at 35, E.R. 264.

Movants subsequently filed a petition for mandamus asking this Court to order recusal.  This Court denied the petition, holding that the district court's denial of recusal was "not clearly erroneous as a matter of law."  Order at 2, *In re Arpaio*, No. 15-72440 (9th Cir. Sept. 15, 2015).

3.  On May 13, 2016, the district court issued extensive findings of fact based on the evidentiary hearings (May 2016 Findings of Fact).  The court found Sheridan in civil contempt on Counts One and Three.  First, the court found that Sheridan "[k]nowingly and [i]ntentionally [f]ailed to [i]mplement the [p]reliminary [i]njunction" (Count One).  Doc. 1677, at 16, E.R. 83.  The court also found that Sheridan violated the court's May 2014 orders to gather recordings of police stops

- 8 -

that were responsive to plaintiffs' discovery requests (Count Three). Doc. 1677, at 40-43, E.R. 107-110. The court also noted that Sheridan had admitted that he had violated these court orders. Doc. 1677, at 16, 43, E.R. 83, 110; see also Doc. 1677, at 16-20, 40-43, E.R. 83-87, 107-110.

Although the court found Sheridan in civil contempt on Count One, it declined to use its contempt power to coerce compliance with the preliminary injunction because defendants were no longer violating the injunction. The court deferred resolution of compensation for victims injured by the violations of the preliminary injunction, inviting further input on this matter. Doc. 1677, at 155, E.R. 222. Subsequently, the court ordered defendants to pay compensation to the victims, but expressly *declined* to hold Sheridan, as a nonparty contemnor, jointly and severally liable for any of these costs, recognizing that most, if not all, of the individual contemnors would be unable to bear the expense of even notifying potential victims. Doc. 1791, at 3, E.R. 307.

With respect to Count Three, Sheridan's violations of the May 2014 orders regarding retrieval of recordings, the court stated that it did "not view this act as giving rise to any relief separate from that which would be appropriate for the other misconduct." Doc. 1677, at 161, E.R. 228. But the court also invited the parties to address what relief might be appropriate. Doc. 1677, at 161, E.R. 228.

- 9 -

4.  On July 20, 2016, the district court, based on its prior extensive factual findings, issued the Second Permanent Injunction mandating new internal affairs procedures for the investigation and resolution of allegations of employee misconduct.  Doc. 1748.[6]  The court determined that had the evidence previously withheld been produced at trial, it "would have entered injunctive relief much broader in scope."  Doc. 1677, at 158, E.R. 225; see also Doc. 1765, at 3, E.R. 3. The court explained that it was ordering additional remedies that "are necessary to cure the MCSO's constitutional violations, in light of the MCSO's history of noncompliance."  Doc. 1765, at 5, E.R. 5.  Among other things, the injunction authorizes an independent investigator to examine certain prior misconduct related to the plaintiff class committed by MCSO employees, as identified in the May 2016 Findings of Fact, and if appropriate, to recommend employee discipline. Doc. 1765, at 54-57, E.R. 54-57.  The injunction provides the Independent Investigator sole authority to decide whether to investigate these matters, including twelve instances of misconduct that had been previously investigated inadequately by MCSO.  Doc. 1765, at 54-55, 61, E.R. 54-55, 61.

---

[6]  The July 20, 2016 order was twice amended.  See Doc. 1760 (Amended Second Supplemental Permanent Injunction/Judgement Order); Doc. 1765, E.R. 1-67 (Second Amended Second Supplemental Permanent Injunction/Judgement Order).

5.  On September 15, 2016, Sheridan, Arpaio, and Sousa, filed a notice of appeal from the Second Permanent Injunction and the subordinate interlocutory orders.  Doc. 1807, E.R. 270-271.

6.  On October 26, 2016, Sheridan, Arpaio, and Sousa filed a third motion to recuse the district court judge.  Doc. 1854.  This motion, including related factual determinations, discovery issues, and movants' standing to assert the motion, remains pending in the district court.  However, on May 18, 2017, Sousa withdrew from the motion, notifying the district court that he lacked standing based on his retirement from MCSO in April 2017.  Doc. 2044, at 2.

7.  On December 27, 2016, Sheridan, along with then-appellant Arpaio and Sousa (who, as noted, are no longer appellants in this case), filed their opening brief.  The brief argues that the Second Permanent Injunction exceeds the district court's remedial powers, that the district court judge must be disqualified based on various alleged misconduct, and that the Second Permanent Injunction and underlying contempt findings must be vacated.  Specifically, Sheridan argues that the injunction is not "narrowly tailored" to remedy the constitutional violations at issue, and exceeds the limits of federal courts' authority to provide equitable relief and civil contempt remedies.  Opening Br. 1, 29-42.  Sheridan also argues that Judge Snow and the monitor must be disqualified, and the contempt findings and injunction vacated, based on the judge's alleged bias.  Opening Br. 43-59.

- 11 -

## DISCUSSION

Sheridan's appeal should be dismissed for lack of standing. His appeal challenges, and seeks to vacate, the July 26, 2016, Second Permanent Injunction and the underlying contempt findings, and seeks the disqualification of the district court judge and monitor. But Sheridan suffers no injury in fact from the challenged orders or the non-recusal of the district court judge and monitor. Sheridan is no longer employed by MCSO, and therefore is not subject to the Second Permanent Injunction. And while the district court found Sheridan in civil contempt for violating the court's orders, the court did not impose any sanctions or remedial liability on him.[7] Moreover, Sheridan consented to the contempt finding, admitting to the underlying facts. Accordingly, because Sheridan has no legally cognizable interest in this appeal, it must be dismissed for lack of standing.[8]

---

[7] Indeed, Sheridan does not challenge the order requiring *defendants* to compensate victims of his contempt in violating the preliminary injunction. That order has been appealed separately by defendant Maricopa County. See *Melendres* v. *Maricopa County, Arizona*, appeal pending, No. 16-16661 (9th Cir.).

[8] The doctrines of standing and mootness are closely related here as both "restrict[] judicial power to the decision of cases and controversies." *Nome Eskimo Cmty.* v. *Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995); see, *e.g.*, *Von Haar* v. *City of Mountain View*, 584 Fed. Appx. 297 (9th Cir. 2014); see also United States' Motion To Dismiss Movant-Appellant Brian Sands' Appeal As Moot, *Melendres* v. *Sands*, appeal pending, No. 16-16659 (9th Cir.). The Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing)

(continued…)

A.      *Sheridan Lacks Standing To Challenge The Second Permanent Injunction*

1.  Standing to sue or defend is an "essential aspect" of the case-or-controversy requirement of Article III of the Constitution.  *Hollingsworth* v. *Perry*, 133 S. Ct. 2652, 2661 (2013).  Article III standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance."  *Arizonans for Official English* v. *Arizona*, 520 U.S. 43, 64 (1997); see also *Diamond* v. *Charles*, 476 U.S. 54, 62 (1986).  Thus, an appellant invoking the federal court's jurisdiction must show that:  (1) he "suffered an 'injury in fact'"; (2) there is a "causal connection" between the injury and the challenged action; and (3) it is "likely" rather than "'speculative' that the injury will be 'redressed by a favorable decision.'"  *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (citations omitted).  Moreover, even where such requirements are met, it is "well settled" that a nonparty "may not appeal [the district] court's order or judgment except in extraordinary circumstances."  *In re Proceedings Before Fed. Grand Jury for Dist. of Nevada*, 643 F.2d 641, 643 (9th Cir. 1981); see also *Hilao* v. *Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) (recognizing that a "nonparty has standing to appeal" only in certain "exceptional circumstances").

---

(continued…)
must continue throughout its existence (mootness)."  *United States Parole Comm'n* v. *Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted).

a. To satisfy Article III's injury-in-fact requirement, a litigant must demonstrate a "legally and judicially cognizable" injury, *Raines* v. *Byrd*, 521 U.S. 811, 819 (1997), that is "concrete and particularized" and "actual or imminent," *Defenders of Wildlife*, 504 U.S. at 560 (internal quotation marks omitted). Here, the challenged Second Permanent Injunction requires, among other things, changes in MCSO's policies and operations relating to misconduct investigations, and authorizes the Independent Investigator to investigate or reinvestigate certain prior misconduct related to the plaintiff class committed by MCSO employees. Doc. 1765, at 18-67, E.R. 18-67. The injunction also permits the Independent Investigator to recommend appropriate employee discipline, if he decides to proceed with an investigation of these matters. Doc. 1765, at 54-59, E.R. 54-59.

Because Sheridan is not a party and, more importantly, cannot show any injury-in-fact from the challenged injunction, he has no legally cognizable interest in its appeal. The injunction does not impose any obligations, liability, or sanctions on Sheridan; it simply does not require him to do anything. Cf. *In re Estate of Ferdinand Marcos Human Rights Litigation,* 94 F.3d 539, 544 (9th Cir. 1996) (finding sufficient injury-in-fact to confer nonparty standing where appellant was "clearly confront[ed]" with "either conforming its conduct to the dictates of the injunction or ignoring the injunction and risking contempt"). Without any responsibility for implementing the Second Permanent Injunction, Sheridan lacks

- 14 -

the requisite "direct stake in the outcome" to establish standing. *Diamond*, 476

U.S. at 62 (internal quotation marks omitted); see *Wolff* v. *Cash 4 Titles*, 351 F.3d

1348, 1354 (11th Cir. 2003) ("Only a litigant 'who is aggrieved by the judgment or

order may appeal.'") (internal quotation marks and citation omitted).

   Indeed, Sheridan has admitted that, as an ex-employee, he "can no longer be

subject to discipline by MCSO." Doc. 1987, at 4 n.2. Accordingly, although the

challenged injunction does, in theory, *allow* the Independent Investigator to

investigate (or reinvestigate) certain misconduct that Sheridan committed while he

was an MCSO employee, even if the investigator decided to review Sheridan's

prior conduct, as a non-employee Sheridan cannot be subject to further MCSO

discipline. See Doc. 1765, at 61, E.R. 61 (allowing the investigator to consider the

practicality and expense of bringing charges when determining whether to

investigate). And even if Sheridan could be subject to further discipline, he is not

"immediately in danger of sustaining some direct injury as the result of" the mere

*possibility* that the investigator might commence investigations. *City of Los

Angeles* v. *Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).

Accordingly, any potential harm that might arise from a new investigation under

the Second Permanent Injunction is far from the "concrete and particularized" and

"actual or imminent" injury required to confer standing. *Defenders of Wildlife*,

504 U.S. at 560 (internal quotation marks omitted).

- 15 -

b.  Nor can Sheridan meet the causality and redressability requirements for Article III standing.  First, these elements of the standing analysis presume the existence of some "injury in fact" that flows from the Second Permanent Injunction—injury that, as discussed above, is not present here.  And even if Sheridan believes that the Independent Investigator's investigation itself, or the civil contempt findings against him, might result in "moral stigma" or other reputational hardships, his challenge to the injunction, even if successful, would not redress that injury.  *St. Pierre* v. *United States*, 319 U.S. 41 (1943).  The district court already made extensive factual findings detailing Sheridan's misconduct in its May 2016 Findings of Fact.  See, *e.g.*, Doc. 1765, at 56-57, E.R. 56-57.  Sheridan has also admitted to his underlying contumacious conduct and the contempt finding against him, and he does not challenge those findings here.[9]

Thus, if there *were* an investigation into Sheridan's conduct by the Independent Investigator, any injury would likely be redundant because of the district court's extensive, unchallenged findings about Sheridan's conduct and his own admissions.  And vacating the injunction would not necessarily prevent any independent entities from exercising their authority to investigate Sheridan's misconduct.  For these reasons, any injury resulting from such *possible*

---

[9] A finding of civil contempt is not punitive and "is not appealable *until sanctions have been imposed*."  *SEC* v. *Hickey*, 322 F.3d 1123, 1127 (9th Cir. 2003) (internal quotation mark omitted).

- 16 -

investigations would neither be "redressed" by a favorable decision vacating the injunction, *Defenders of Wildlife*, 504 U.S. at 561 (internal quotation marks omitted), nor "fairly traceable" to the challenged injunction, *id.* at 590 (quoting *Allen* v. *Wright*, 468 U.S. 737, 751 (1984)).

2. Even if Sheridan were able to establish the requisite injury, causation, and redressability, absent exceptional circumstances "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino* v. *Ortiz*, 484 U.S. 301, 304 (1988). Sheridan cannot demonstrate that the necessary "exceptional circumstances" exist to exempt him from this general rule to give him nonparty standing to appeal. *Hilao*, 393 F.3d at 992; see also *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund* v. *Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007). This Court has allowed such nonparty appeals in limited circumstances, such as when a judgment has been entered against a nonparty, *Hilao*, 393 F.3d at 992 (citing *Hal Roach Studios, Inc.* v. *Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1989)), and a nonparty has been "haled" into a proceeding and has "a legitimate interest" in the appeal's outcome, *SEC* v. *Wencke,* 783 F.2d 829, 834 (9th Cir. 1986) (internal quotation marks omitted).

Here, the Second Permanent Injunction does not direct Sheridan to take any action. MCSO, not Sheridan, must implement it, and as a former MCSO employee Sheridan has no stake in its administration. Indeed, the Supreme Court has held

that even an employee cannot appeal a judgment approving a consent decree with its employer if the employee is not a party. See *Marino*, 484 U.S. at 304.

**B.** *Sheridan Lacks Standing To Appeal The Denial of Recusal*

As explained above, only a litigant injured by the court's order has standing to appeal. "The most obvious difference between standing to appeal and standing to bring suit is that the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts." 15A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3902 (2d ed. 1992). Sheridan, who has retired and is no longer subject to the district court's remedial power, cannot show injury from the order denying recusal.[10]

---

[10] On appeal, Sheridan raises two issues not presented in his May 21, 2015, motion to recuse. First, he asserts that various alleged ex parte communications between the court and its monitor warrant recusal. Opening Br. 43-51. Second, Sheridan seeks disqualification of the monitor. Opening Br. 43. Sheridan first raised these two issues in the third recusal motion, filed *after* the notice of appeal in this case. Doc. 1854. This motion is pending below. A litigant generally may not raise a Section 455 claim seeking disqualification of the court, for the first time on appeal. *California* v. *Montrose Chem. Corp. of Cal.*, 104 F.3d 1507, 1521 (9th Cir. 1997); but see *United States* v. *Rangel*, 697 F.3d 795, 804 (9th Cir. 2012) (assuming Court can review newly raised recusal argument for plain error). In any event, while 28 U.S.C. 455 addresses recusal of the *court*, Sheridan cites nothing entitling him to seek recusal of the *monitor*, particularly where the *parties* do not seek it and the issue is pending below. Cf. *Kapco Mfg. Co.* v. *C & O Enters., Inc.*, 886 F.2d 1485, 1494 (7th Cir. 1989) (attorney had no standing to appeal denial of motion to disqualify opposing counsel, given client had not appealed); *Montrose Chem. Corp. of Cal.*, 104 F.3d at 1521 (holding Court may consider, for the first time on appeal, *reassignment* to a different *judge* on remand).

- 18 -

1.  In general, nonparties like Sheridan do not have standing to seek recusal.

See 28 U.S.C. 455(b)(1) (providing for recusal because of "personal bias or

prejudice concerning a *party*") (emphasis added).  Nonparties can rarely show

there is a "pending action before [the court] in which the[ir] rights * * * are at

issue." *United States* v. *Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988); see also *id.* at

626, 630 n.21, 636 (holding that nonparty witnesses, who had purged contempt by

complying with court orders, lacked standing to seek recusal).  And because

Sheridan is now the lone appellant, he "must assert his own legal rights and

interests," not those of the Sheriff or MCSO.  *Warth* v. *Seldin*, 422 U.S. 490, 499,

(1975).  Accordingly, Sheridan cannot seek recusal under Section 455 merely by

asserting bias or error.  Sheridan must demonstrate that he has "suffered an actual

or threatened injury" resulting from alleged bias.  *Sciarra*, 851 F.2d at 636.[11]

Judge Snow's denial of recusal did not cause, and does not threaten to cause,

Sheridan any concrete, remediable harm.  As explained above, Sheridan cannot

identify a concrete injury from the Second Permanent Injunction.  As he

---

[11]  Sheridan's claim is particularly tenuous because he does not allege bias
against himself—instead, he points to alleged bias against Arpaio, who is no longer
a party.  An appellant does not have standing to "seek vicariously to raise an
appearance of partiality."  *Pashaian* v. *Eccelston Properties, Ltd.*, 88 F.3d 77, 82-
83 (2d Cir. 1996).  Bias against one defendant, for example, does not give a co-
defendant standing to appeal non-recusal.  *United States* v. *Hoffa*, 382 F.2d 856,
861 (6th Cir. 1967), cert. denied, 390 U.S. 924, (1968).

acknowledges, Sheridan *consented* to a finding of civil contempt and *admitted* to underlying facts, and he did so *before* he sought to replace Judge Snow. Opening Br. 7, 53; Doc. 948. Without any injury from the Second Permanent Injunction, Sheridan certainly cannot show "immediate[] danger of sustaining some direct injury" from the court's refusal to recuse itself. *Lyons*, 461 U.S. at 102 (internal quotation marks omitted). Indeed, Sheridan is not subject to any orders that Judge Snow has issued or may issue against MCSO. See *United States* v. *Day*, 215 Fed. Appx. 975, 976 (11th Cir. 2007) (holding defendant did not have standing to seek recusal for "future motions that he might, or might not, file") (emphasis omitted). With no real connection to the current litigation, Sheridan can only present far-flung speculations of harm from the court's continued administration of the case, and "alleg[ing] only an injury at some indefinite future time" is not enough.[12] *Defenders of Wildlife*, 504 U.S. at 565 n.2.

2. Even if he could show some injury, Sheridan cannot establish a causal connection between the alleged injury and nonrecusal. The harms Sheridan mentions—potential investigations into his conduct—do not involve Judge Snow.

---

[12] Cases affording criminal defendants standing to address jurisdiction, such as *Bond* v. *United States*, 564 U.S. 211, 222-226 (2011), and *United States* v. *McIntosh*, 833 F.3d 1163, 1174 (9th Cir. 2016), do not support Sheridan. Criminal defendants' injury—potential imprisonment—is unquestioned. Even if Sheridan had standing to seek recusal while the court was considering his civil contempt, his claims are moot as he is under no continuing court order. *Geraghty*, 445 U.S. at 397 (noting that loss of standing moots a claim).

State officials, MCSO employees, and the Independent Investigator are the ones who would carry out any investigations or discipline (which is improbable given that Sheridan has retired). Sheridan cannot claim standing for an injury "that results from the independent action of some third party not before the court." *Simon* v. *Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976). Indeed, these agents can investigate any MCSO officer; under Sheridan's logic, every officer has standing to try to remove Judge Snow from the case. And if these third parties do carry out the investigations Sheridan fears, the investigators could rely on Sheridan's own actions and admissions, rather than the Second Permanent Injunction, as evidence.

Nor can Sheridan establish, as he must, that "victory in this suit would result in [his] receiving [what he] desire[s]." *Simon*, 426 U.S. at 45-46. Recusal would not undo the harms he might envision, such as reputational injury or hypothetical future discipline. Sheridan cannot show a "substantial likelihood" that recusal would bar the State or MCSO from investigating him should they chose to do so. *Id*. at 45. Because he admitted to violating the court's orders, any reputational harm Sheridan suffers would, furthermore, not be undone by recusing Judge Snow.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Sheridan's appeal for lack of standing.

Respectfully submitted,

T.E. WHEELER, II
  Acting Assistant Attorney General

s/ Christine H. Ku
THOMAS E. CHANDLER
CHRISTINE H. KU
APRIL J. ANDERSON
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 353-9044

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2017, I electronically filed the UNITED

STATES' MOTION TO DISMISS NONPARTY APPELLANT GERARD A.

SHERIDAN'S APPEAL FOR LACK OF SUBJECT MATTER JURISDICTION

with the United States Court of Appeals for the Ninth Circuit by using the

CM/ECF system.

I certify that all participants in this case are registered CM/ECF users, and

service will be accomplished by the appellate CM/ECF system.

<div style="margin-left: 50%;">

s/ Christine H. Ku
CHRISTINE H. KU
 Attorney

</div>