No. 16-16663

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MANUEL DE JESUS ORTEGA MELENDRES, *et al.*,
*Plaintiffs/Appellees,*

UNITED STATES OF AMERICA,
*Intervenor-Plaintiff/Appellee,*

v.

MARICOPA COUNTY,
*Defendant.*

GERARD A. SHERIDAN,
*Movant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
2:07-cv-02513-GMS

**MOVANT-APPELLANT'S RESPONSE TO PLAINTIFFS-APPELLEES'
MOTION TO DISMISS MOVANT-APPELLANT SHERIDAN'S APPEAL**

Mark D. Goldman (012156)
Jeff S. Surdakowski (030988)
Simon P. Kennedy (023938)*
GOLDMAN & ZWILLINGER PLLC
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Main: (480) 626-8483
Facsimile: (480) 502-7500
E-mail: docket@gzlawoffice.com
Attorneys for Joseph M. Arpaio and
Gerard Sheridan
*Admission Pending

Appellees' motion to dismiss Gerard Sheridan ("Sheridan"), the former Chief Deputy of the Maricopa County Sheriff's Office ("MCSO"), based on lack standing to appeal the civil contempt order and to request recusal of the district court judge and the appointment of a new court monitor in the matter below[1] is in error. Through misunderstanding and misapplication of the case law regarding party standing, Appellees' argue that because Sheridan is a non-party to the underlying litigation he lacks standing to challenge the district court judge's orders. Appellees' also deny that the district court's actions affected Sheridan in a personal and individual way. However, this reasoning implicitly concedes that if Sheridan suffers a personal and individual harm he would have standing. As a non-party to the underlying federal district court litigation, the district court's Second Supplemental Injunction[2] [Dist. Ct. Doc. 1765], the Findings of Fact and Law [Dist. Ct. Doc. 1677], and the Order Re Criminal Referral[3] [Dist. Ct. Doc. 1] affect Sheridan personally and have caused him concrete, ongoing, and non-speculative injuries that this court could favorably redress. For the reason stated in this Response, Appellant Gerard Sheridan requests that this court deny Appellees' motion to dismiss him from this appeal and to lift the stay on the briefing schedule so that this appeal may move forward.

---

[1] *Melendres and the United States v. Penzone*, CV-07-02513-PHX-GMS

[2] Docket Citations herein denoted "Dist. Ct. Doc." are to the district court docket, 07-CV-02513-PHX-GMS.

[3] *Melendres and the United States v. Arpaio*, et al., CR-16-01012-SRB

## STATEMENT OF FACTS

Appellees filed a lawsuit against Joseph Arpaio ("Arpaio"), the former Maricopa County Sheriff, the MCSO, and Maricopa County in 2007 (collectively "the Defendants"). They alleged that Arpaio and MCSO officers violated the Appellees' Fourth and Fourteenth Amendments rights. The district court entered a preliminary injunction in 2011, prohibiting Defendants from detaining any individual "based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States." ER 886-90. After conducting a bench trial, the district court then entered permanent injunctive relief in May 2013. ER889.

On Appeal, this Court reviewed the permanent injunction[4] and affirmed in part and vacated and remanded in part the injunctive relief. Specifically, this Court substantially limited the district court's Monitor Authority Order, which granted the Monitor sweeping authority to consider violations of any departmental policy and civil suits or criminal charges brought for any reason. *Melendres II*, 784 F.3d at 1267. This court concluded that the district court improperly allowed the Monitor to consider violations with "no bearing on the constitutional rights at stake here". *Id*.

In May of 2014, while the district court was monitoring the MCSO's compliance with the permanent injunction, MCSO Deputy Armendariz committed suicide. ER180. The resulting search of Armendariz's home and turned up video clips of MCSO traffic stops and personal items confiscated during searches. ER107, ER116. Arpaio and MCSO brought the discovery of the videos and personal items at Armendariz's home to the district court's attention. MCSO and

---

[4] *See Melendres II*, 784 F.3d 1254

the Monitor commenced an investigation into the videos and the personal items retained in Deputy Armendariz's possession.

In February 2015, the district court issued an Order to Show Cause why several MCSO officials should not be held in contempt based on the Armendariz matter and other issues that had come to light during the ensuing investigation. ER570. The Order to Show Cause expressly left open the potential for a criminal contempt referral of the named officers if the court concluded that the civil contempt remedies were inadequate. ER577-78. As a result of the Order to Show Cause, the MCSO, Arpaio, and Sheridan submitted a motion stating that they would consent to a finding of civil contempt against them in an effort to forestall a criminal contempt referral. [Dist. Ct. Doc. 1003]. Among other things, the MCSO, Arpaio, and Sheridan agreed to remedial measures "designed to address the court's directives" concerning the need for a "punitive element." [Dist Ct. Doc. 948 at 4 n.2]. As such, they requested that the court vacate the upcoming evidentiary hearing, asserting that their proposed admissions obviated the need for further civil or criminal contempt proceedings. *Id*. at 1-2.

The district court did not accept MCSO's, Arpaio's, and Sheridan's consent to civil contempt against them and instead proceeding with a twenty-one-day civil contempt evidentiary hearing held between April 2015 and November 2015. ER560-62. The district court did not issue the Contempt Injunction until July 2016. ER1. On August 19, 2016, the district court judge referred Arpaio and Sheridan to another judge for prosecution for criminal contempt. ER273.

In the contempt finding, the district court held Arpaio and Sheridan[5] in civil contempt on one or more of three grounds identified in the Order to Show Cause:

- The Court cited four officers, including Sheridan, for failing to implement the December 2011 preliminary injunction. The court concluded that it

---

[5] As well as Lieutenant Joseph Sousa.

4

was not until it issued its Findings of Fact and Conclusions of Law in May 2013, that remedial measures were implemented to alter the way the MCSO enforced immigration laws. ER72.

- The court cited Arpaio for Defendants' failure to produce evidence in response to Plaintiffs' discovery requests and court orders. ER100-01.

- The court cited Arpaio and Sheridan for violating the court's oral instruction to quietly recover video recordings from MCSO personnel. ER110. The court found that email instructions to commanders at MCSO led to the destruction of some videos rather than the safekeeping of those videos.

In the findings, the district court conceded that because "Plaintiffs do not assert that Defendants remain in violation of the Court's preliminary injunction," there is "no need to use the Court's contempt power to coerce Defendants to comply with the preliminary injunction." ER222. Even though the court found that "the Defendants are no longer detaining members of the Plaintiff class without authorization", they were "manipulating the operation of their disciplinary process to minimize or altogether avoid imposing fair and equitable internal discipline for misconduct committed against the members of the Plaintiff class". ER224. Despite this concession, the court notified the parties that it sought to impose remedies outlined in the Findings of Fact and Conclusions of Law. ER222-28. Those remedies form the basis of Appellant Sheridan's Appeal to this Court.

## ARGUMENT

Appellees cite a litany of cases to show that Sheridan does not have traditional party standing[6] to challenge to the district court's injunctive relief and

---

[6] Appellants filed a motion to amend the caption on September 27, 2016, to include the non-parties appealing the civil contempt findings and Appellees did not oppose that motion. [Doc. 3]. It was granted by this court on December 8, 2016. [Doc. 10]. No standing issues were raised by Plaintiffs-Appellees at the time the motion to amend was filed.

contempt findings[7] or to seek prospective recusal of the district court Judge and Monitor. These cases are distinguishable from the issues in this appeal for two reasons. First, the majority of cases cited by Appellees deal with party standing as opposed to non-party standing. Second, their analysis of those cases is fundamentally at odds with the factual realities underlying the cases cited and the present matter.

Appellant does not contest the traditional requirements for a party to have Article III standing[8]. Article III standing requires litigants to demonstrate they (1) suffered a concrete and particularized injury; (2) of which the claimed injury must be one that can be fairly traced to the challenged action and not an injury that results from the independent action of some third party not before the court; and (3) that their injuries are likely to be redressed by a favorable judicial decision[9]. These elements, however, are either inapplicable or applied in an entirely different way than assessed in Appellees' motion to dismiss Sheridan from this appeal.

The district court proceedings have been ongoing since 2007. Sheridan was an identified non-party. Even though Sheridan is a non-party to the underlying litigation, he has participated in it since, at least, the district court entered its Order to Show Cause in February 2015. He participated as a witness in the evidentiary hearings and his actions, along with those of Arpaio, were scrutinized by the district court judge and detailed in the district court's injunctive relief and contempt findings.

This Court has recognized non-party standing when a party "has haled the non-party into the proceedings against his will, and then has attempted to thwart

---

[7] The phrase "injunctive relief and contempt findings" refers to the district court's Second Supplemental Injunction, civil contempt findings, and criminal contempt referral.
[8] U.S. Const. Art. III, §2
[9] *See e.g., Bond v. United States*, 564 U.S. 211 (2011).

the nonparty's right to appeal by arguing that he lacks standing", *Hilao v. Estate of Marcos*, 393 F.3d 987 (9th Cir. 2004) (quoting *SEC v. Wencke*, 738 F.2d 829, 834 (9th Cir. 1986)), or when judgment has been entered against the nonparty, *Id*. (quoting *Hal Roach Studios, Inc., v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989)).

This Court recently reaffirmed this principle in *United Stated v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) when it concluded that Article III posed no barrier to criminal defendants challenging the Department of Justice from prosecuting them where a congressional appropriations rider prohibited the Department from using funds to prosecute people in the criminal defendant's class. This Court explained that the defendants "clearly had Article III standing to pursue their challenges [in the district court] because they were merely objecting to relief sought at their expense." *Id*. at 1173-74. The court added that the defendants had standing to appeal to the Ninth Circuit because "their potential convictions constitute concrete, particularized, and imminent injuries," which are caused by their prosecutions, which the court could redress. *Id*.

Similarly, the district court's injunctive relief and contempt findings have caused Sheridan concrete, particularized, and imminent injuries. Sheridan's appeal challenges the district court's injunctive relief and contempt findings and seeks to recuse the district court Judge and Monitor from its ongoing investigation into his actions while Chief Deputy at MCSO. The district court has repeatedly stated that the injunction and civil and criminal contempt orders were entered to vindicate the rights of the plaintiff class. In doing so, the district court has ordered new or reopened internal affairs investigations into Sheridan's conduct over which it retains supervisory control. [*See e.g.*, Dist. Ct. Doc. 1677 at ¶¶ 405, 406, 412, 433, 490, 491, 492-567, and 573]. There is no speculation that Sheridan is harmed by the district court's injunctive relief and contempt findings.

7

The ongoing investigation and the contempt findings against Sheridan give him standing to appeal the injunctive relief and contempt findings because these orders have caused damage to his reputation. Numerous authorities establish that reputational injury, alone, constitutes sufficient standing to bring this appeal. *See e.g.*, *Lexmark Int'l v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation v. Standard Oil Company of California*, 747 F.2d 1303 (9th Cir. 2000); *Walker v. City of Lakewood*, 272 F.3d 1114, 1124, n.3 (9th Cir. 2001); *United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000). As long as the internal affairs investigations continue through the supervisory power of the district court and as long the civil contempt order stands, Sheridan's professional reputation suffers and he will be incapable of casting off the moral stigma associated with the district court's activities. This court can redress the district court's action with a favorable decision for Sheridan. Thus, even though Sheridan is a non-party, he has non-party standing to assert legal challenges against the district court's injunctive relief and contempt findings.

## I. Sheridan is Connected to the Remedial Measures Ordered by the Second Supplemental Injunction.

Plaintiffs-Appellees claim that Sheridan lacks standing to challenge the district court on appeal because he has no requisite connection to the injunctive relief or the civil contempt citations. In their view, Sheridan is an ordinary citizen with no connection to the underlying litigation greater than any other citizen of Maricopa County. This, of course, ignores the size and scope of the underlying litigation in terms of the legal issues addressed and the power over which the district court has exerted itself over Sheridan. While the injunctive relief and the civil contempt might not oblige Sheridan to do or act in any certain way currently, the injunctive relief and contempt findings reopened or initiated new internal

affairs investigations into Sheridan's past acts, which has damaged his professional reputation. As long as the district court's injunctive relief and contempt findings continue without this Court's intervention, they affect Sheridan in a personal and individual way.

Appellees cite *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), in which the Supreme Court vacated the judgment of Ninth Circuit that allowed Petitioners (an organization that sponsored an anti-gay marriage proposition in California) to assert California's legal interests in defending a proposition passed by the State of California that defined marriage to be a union between only a man and a woman; the State of California refused to defend the constitutional challenge to the law. The court found that it had "never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to" do so. *Id*. at 2668.

The factual discrepancy between Sheridan's appeal and Petitioners in *Hollingsworth* is clear. The Petitioners in that case stepped in the shoes of the State of California because the government officials did not want to defend the anti-gay marriage proposition. Those Petitioners were not the proper party to the suit; they were a third-party hoping to assert the rights of a government entity. Here, Sheridan is more than a third-party to the underlying litigation. He is the subject of injunctive relief and contempt findings that directly affect him because they institute ongoing investigations into his prior acts.

Appellees likewise cite a number of cases to attempt to persuade this Court that Sheridan has no connection to the district court's actions. They cite *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560, n.1 (1992), in which a group of environmentalist challenged the Secretary of the Interior for enacting a regulation that only required other agencies to consult with Department of the Interior for actions taking in the United States, but not those taken by foreign agencies. The

Supreme Court found that the Respondents could not point to an imminent harm caused by the regulation and therefore, could not show they suffered an imminent injury due to regulations promulgated by the Secretary of the Interior.

Additionally, Plaintiffs-Appellees cite to *Hilao*, 393 F.3d at 992 (which quotes *S. Cal Edison Co.*, 307 F.3d at 804; and *SEC v. Wencke*, 783 F.2d 829, 834-35 (9th Cir. 1986)); *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); and *Emp'rs-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007). In *Hilao*, this Court found that the Republic of the Philippines lacked standing to challenge district court orders because none of the district courts orders or decisions were directed to the Republic. *Id*. at 994. In *Marino*, a professional organization lacked standing to challenge a settlement agreement that did not include its membership because the professional organization was not a party to the underlying litigation, though it could have intervened in the lower court at any time before approval of the settlement agreement. *Id*. at 588. In *Emp'rs-Teamsters Local Nos. 175 & 505*, potential members of a potential class attempted to challenge the district court's dismissal of the underlying complaint. The court held that the potential class members were not certified and, therefore, not a party to the litigation. The court stated that at any time before the dismissal they could have intervened in the action but did not do so. *Id*. at 924.

Appellees argue that Sheridan had no relationship to the original trial or resulting injunctive relief[10] [Doc. 38, P.10, lines 16-17]. Sheridan does not appeal from the original trial and injunctive relief. He objects at having been hauled into the litigation and accused of wrongdoing through the court's subsequent injunctive

---

[10] Appellant has found no cases to support Appellees position that a non-party has to be involved in the original trial and subject to original relief granted to show that the non-party has standing.

relief and contempt findings. The district court Judge brought Sheridan into the litigation by issuing its sweeping Second Supplement Jurisdiction, which opened or renewed investigations into Sheridan's past conduct. Moreover, the civil contempt findings and the referral for criminal contempt has damaged Sheridan's professional reputation despite his objections to the court's actions. As a non-party, his only available remedy is to appeal the district court's decisions. Sheridan's position is (as briefed in Appellant's Opening Brief) that those actions exceed the powers of the district court. It is the district court that has sufficiently connected Sheridan to the case to give him standing to challenge the district court's decisions.

### A. Appellees Concede That if the Remedies of the District Court Affect Him in a Personal and Individual Way, Sheridan Has Standing to Appeal.

Appellees contend that standing would only be proper if the district court's injunctive relief and contempt findings "affect [Sheridan] in a 'personal and individual way." *Hollingsworth*, 133 S. Ct. at 2662 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). According to Appellees, the district court's compensatory and coercive remedial measures do not affect Sheridan in a personal and individual way. Rather, they contend that the district court's injunctive relief and contempt findings place no continued obligation on Sheridan now that he has left the agency. (Doc. 38, p. 10).

Sheridan has a legitimate interest in challenging the district court's injunctive relief and civil contempt findings. A non-party's right "…to appeal an adjudication of contempt cannot be questioned. The order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 76 (1988) (quoting, *United Stated V. Ryan*, 402

U.S. 530, 532 (1971).  This is particularly true when a non-party has a legitimate interest to challenge to a district court's contempt order against the non-party.  *Id*. Sheridan has a legitimate interest to challenge the issues set forth in this appeal because they authorize an ongoing investigation by internal affairs, which has caused a concrete injury to his reputation.  As this matter progressed in the lower court, Sheridan became a direct subject of the court's actions and the court's injunctive relief and contempt findings affected Sheridan in a personal and individual way.

The Second Supplemental Injunction gives the district court final authority over the new or re-opened internal affairs investigation it has ordered:

- Internal investigations into Movants' conduct and appointed two of the Court's agents – the "Independent Investigator" and the "Independent Disciplinary Authority" – to conduct those investigations. The investigations placed under the authority of these two agents include IAs #2014-542 and #2014-543, which involve Sheridan.  [Dist. Ct. Doc. 1765 at ¶ 296].

- The Court identified seven instances of alleged misconduct by Sheridan alone that warranted investigation by its two agents[11].  [*Id*. ¶301(a)-(f), (j)].

Even if Sheridan can no longer be disciplined or terminated in the ordinary course of these investigations, the decisions of the investigators and discipline authority harms his reputation.  The district court's decisions affect Sheridan significantly more than an ordinary citizen because it makes him the direct object of the court's injunctive relief and contempt findings.  The district court's continued involvement

---

[11] The court retains control over appointing the officers, exercises final decision-making authority over whether the investigation concerns matters "sufficiently related to the rights and remedies to which the members of the Plaintiff class are entitles so as to be within [the Investigator's] jurisdiction.  At a minimum, the district court retains jurisdiction and is empowered to make all legal determinations and to decide any other matters related to the Independent Investigator's or Disciplinary Authority's powers.

and final authority has harmed and continues to harm Sheridan's professional reputation. It is clear that Sheridan has a personal and individual connection to the Second Supplemental Injunction's harm to his reputation far greater than an ordinary citizen. Thus, by the Appellees own admission, Sheridan has standing to make this appeal.

## II.    Sheridan has Standing to Seek Prospective Recusal of the District Court Judge and Monitor.

As stated in Section I above, Sheridan has an interest in the future proceedings by the district court and its monitor beyond that of an ordinary citizen. Sheridan has specifically shown that the district court's injunctive relief and contempt findings harm his professional standing in the community. Ongoing investigations into his past conduct and the civil contempt findings and criminal contempt referral have all injured Sheridan's reputation. Reputational harm, itself, is not a speculative injury and the case law recognizes that it is an injury-in-fact, which supports standing. *See e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014); *Walker v. City of Lakewood*, 272 F.3d 1114, 1124, n.3 (9th Cir. 2000); 13A WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 3531.4 (3d ed. 2017) (injury to "individual reputation supports standing").

Again, the cases cited by Plaintiffs-Appellees have misstated or misapplied the rule for non-party standing, especially in the context of motions for recusal. *In re Cement Antitrust Litigation (MDL No. 296)*, 688 F.2d 1297, 1310 (1982) does not find that class members were not parties such that they did not have standing to seek the court's recusal. In fact, this Court said that "because of the appearance of impropriety is similar whether the interest is in a named party or a class member, class members should be viewed as parties for purposes of recusal under that statute." *Id*. This Court further found that "the 'term' party' as used in (the recusal

statute) must be given its broad customary meaning rather than the narrow construction suggested by plaintiffs, and held that for the purposes of the recusal statute, the term 'party' includes class members. *Id*. at 1313. No matter how small a personal bias or prejudice concerning a party (or class member) may be, it still requires recusal of the judge in order to maintain the appearance of impartiality. *Id*. Despite Appellees arguments to the contrary, the court in *United States v. Sciarra*, 851 F.2d 621 (3d Cir. 1988) expressed no opinion regarding the standing of a non-party witness to invoke the disqualification statute in the context of an actual case or controversy. Rather, the court found that the non-party witnesses could not invoke standing under the recusal statute because there was no pending action before the judge in which their rights were at issue. *Id*. 636.

Sheridan's appeal concerns an active litigation in which an actual case or controversy exists. District court orders directly affect him and he has suffered an injury-in-fact due to the actions of the district court and he satisfies the requirement for standing to seek recusal of the district court Judge and Monitor. The active and ongoing investigations directed by the district court into activities that involve Sheridan, along with the civil contempt findings and the criminal contempt referral provide a sufficient basis for Sheridan to maintain his appeal.

## III. Sheridan has Standing to Seek to Vacate the District Court's Contempt Findings.

Appellees claim that Sheridan has failed to establish any concrete and particularized injury he 'would' suffer that would be redressed by vacating the district court's contempt findings. Sheridan has not alleged an injury he would suffer. He has suffered reputational harm that can be redressed by this Court. Appellees fail to acknowledge that the Second Supplemental Injunction has created new or re-opened investigations into Sheridan's conduct. The civil contempt findings and the criminal contempt referral prevents Sheridan from seeking future

employment in law enforcement. He seeks to address those issues on appeal. A favorable decision for him will vacate the investigations ongoing by the district court and the civil contempt findings, which led to the referral for criminal contempt. In turn, that will restore his profession reputation. See *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976); *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 at 180-81 (2000); *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002).

## A.   A Non-Party May Appeal a Civil Contempt Finding Where That Finding Creates the Injury to Non-Party

In terms of non-party standing to appeal a contempt order, Appellees mistakenly rely on *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986). Appellees argue that *Donallco* stands for the proposition that civil contempt is merely a remedy to help coerce obedience to a court order and so it is not sufficient to maintain appellate standing. [Doc. 38. P. 16, line 4-9]. Standing must, therefore, come from the contemnor's continued obligation to act under the contempt findings. However, the right of a non-party to challenge a contempt order cannot be questioned. *U.S. Catholic Conference*, 487 U.S. 72, 76 (1988) (quoting, *United Stated V. Ryan*, 402 U.S. 530, 532 (1971)). Despite this, Appellees maintain that a contempt finding has to place an obligation on a non-party for the non-party to be able to appeal it. While an ongoing obligation is one type of injury that a court could use to evaluate standing on appeal, it is not the only injury that would support standing of a non-party to challenge a contempt finding.

Courts have routinely found that reputational harm is an injury-in-fact, concrete or imminent, that is traceable to the ordering Judge, upon which a favorable decision could redress. *See e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014); *Walker v. City of Lakewood*, 272

F.3d 1114, 1124, n.3 (9th Cir. 2001); *Unites States v. Talao*, 222 F.3d 1133 (9th Cir. 2001). *Talao*, in particular, is most like this case. In *Talao*, a bankruptcy court found that an attorney "knowingly and willfully violated a specific rule of ethical conduct." *Id*. at 1138. This Court held that "[s]uch a finding, *per se*, constitutes a sanction" and found that an attorney had standing to challenge that determination on appeal, which was overturned. *Id*. Here, the district court Judge clearly found that Sheridan intentionally and/or willfully violated its orders and expressly reached the legal conclusion that he was in civil contempt. [See Dist. Ct. Doc. 1765]. This determination provides substantial reputational harm that justified Sheridan's appealing the contempt findings of the district court.

Appellees' argument that a non-party held in civil contempt lacks the requisite legitimate interest to appeal that ruling where another party or contemnor has assumed responsibility for the contempt remedy is entirely without merit. The reputational harm stems from the contempt order's judgment of Sheridan's action and, as such, constitutes a sanction against him. MCSO may have a continued obligation over which the remedial measures of the injunctive relief and contempt finding apply, but that has nothing to do with the fact that Sheridan has been harmed by the district court's injunctive relief and contempt findings. It is the past/present reputational harm that gives Sheridan standing to appeal the courts contempt findings; the cases cited to by Appellees simply fail to consider this point[12].

### B.    The Civil Contempt Findings Create Concrete Imminent Harms to Sheridan.

---

[12] Plaintiffs-Appellees cite *Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.*, 625 F.2d 881 (9th Cir. 1980) and *In re Grand Jury Subpoena Duce Tecum, 91-02922*, 955 F.2d 670, 672 (11th Cir. 1992). But these cases merely find that where there is a monetary fine resulting from a contempt order, and the party pays the non-party's fine, there is no right of appeal.

The critical flaw to Plaintiffs-Appellees position that the civil contempt citations do not confer standing on Sheridan based on speculative harms is, again, found in their case citations. The civil contempt findings have harmed Sheridan. The harm is not speculative. It is concrete. See, e.g., *Lexmark*, *Walker*, and *Talao*. Plaintiffs-Appellees cite to *St. Pierre v. United States*, 319 U.S. 41 (1943) (holding that review of petitioner's constitutional immunity from self-incrimination is moot because the petitioner already serviced his sentence); *Spencer v. Kemna*, 523 U.S. 1 (1998) (holding that reputation is not a sufficient interest to avoid mootness); *Jackson v. California Dept. of Mental Health*, 399 F.3d 1069 (2005) (holding that petitioner did not have standing to challenge a California law requiring him to be confined under the SVPA because his confinement term expired and before filing the petition for review he voluntarily recommitted himself); *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109 (9th Cir. 1990) (holding that there was no jurisdiction to hear case because it was mooted by settlement).

Though Appellees claim that reputational injury is not sufficient to avoid mootness, they fail to recognize that that "where the harm to reputation arises as a byproduct of government action, the reputational injury, without more, will not satisfy Article III standing *when that government action itself no longer presents an ongoing controversy*." *Foretich v. United States*, 351 F.3d 1198, at 1212 (2003). The governmental action at issue in this appeal is an ongoing controversy, particularly with respect to Sheridan. If he receives a favorable decision in this court, it will redress this harm by removing what effectively amounts to a sanction against his character. It would be impossible for Sheridan to rebuild his reputation in the absence of a favorable decision by this Court, but that does not mean he lacks standing or that his case is moot in anyway. Moreover, the MCSO is not going to resolve the reputational harm for Sheridan.

### C. Any Other Purported Injury Would Suffice for Standing Purposes

Appellees contend that there is no other injury-in-fact that could maintain Sheridan's standing should all the other elements of their motion be denied. Their justification for this position is that it is speculative that the Arizona Peace Officer Standards and Training Board (AZPOST) would end its investigation into Sheridan. Arizona Administrative Code R13-4-109(D) provides that "upon receipt of information that cause exists to deny certification, or to cancel, suspend or revoke, the certified status of a peace officer, the Board Shall determine whether to initiate action regarding the retention of certified status." For Sheridan, the critical issue is not that overturning the district court's findings or remedial orders could potentially end an investigation by AZPOST, but rather that the findings and remedial measures instigated the investigation. The investigation into Sheridan would be baseless under Ariz. Admin. Code R13-4-109(D) if this Court overturns the injunctive relief and contempt findings because AZPOST would no longer have a "for cause" reason to continue its investigation.

Appellees refuse to consider that Sheridan's injury-in-fact continues despite any statute of limitations in prosecuting him for criminal contempt. The injury-in-fact is the reputational harm from an ongoing governmental controversy, which has created new or re-opened investigation by internal affairs and AZPOST. If the district court exceeded its equitable and civil contempt authority and did so under the appearance of partiality, then the court brought into the litigation non-party Sheridan in a way that has ultimately damaged his reputation in the law enforcement community. As a result, Sheridan could ultimately be stripped of any certifications and could likely never obtain employment in law enforcement again. Plaintiffs-Appellees argue that the criminal contempt referral does not create standing because it merely referred the matter to another judge. However, the

referral itself finds probable cause to believe that Sheridan knowingly and intentionally violated the court's injunctive relief. Until the matter is resolved in Sheridan's favor, the Second Supplemental Injunction, the civil contempt findings, and the criminal contempt referral have all created an ongoing, injury-in-fact that is redressable by this court.

## CONCLUSION

Appellant Gerard Sheridan has standing to appeal the district courts injunctive relief and contempt findings. Those orders and findings have caused Sheridan ongoing, concrete and non-speculative harms that have affected his reputation in a personal and individual way. This Court can redress those actions with a favorable decision for Appellant on appeal. For these reasons, Appellant Gerard Sheridan requests that this court deny Appellees' motion to dismiss him from this appeal and to lift the stay on the briefing schedule so that this appeal may move forward.

**RESPECTFULLY SUBMITTED** this 7th day of June, 2017.

GOLDMAN & ZWILLINGER PLLC


By: */s/ Mark D. Goldman*
Mark D. Goldman
Jeff S. Surdakowski
Simon P. Kennedy*
17851 N. 85th Street, Suite 175
Scottsdale, AZ 85004
*Attorneys for Joseph M. Arpaio and Gerard Sheridan*
*Admission Pending

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Response with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

*/s/ Dina D. Horsman*